VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-230



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

JULY TERM,   2024

State of Vermont v. Shane Salls*

}    APPEALED FROM:
}    Superior Court, Washington Unit,
}    Criminal Division
}    CASE NO. 21-CR-05561
       Trial Judge: Kevin W. Griffin

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction, by jury, of grossly negligent operation with serious bodily injury resulting and domestic assault.  He argues the court erred in ruling that portions of a police officer's body-cam video would be admissible if he testified at trial.  We affirm.

Defendant was charged with numerous crimes following a motor-vehicle accident.  The State alleged that defendant was driving and that his passenger suffered serious injuries.  In addition to the crimes noted above, defendant was also charged with second-degree unlawful restraint, aggravated operation without the owner's consent, false information to a police officer, and unlawful mischief.  Just before trial, defendant moved to exclude police-cruiser and body-cam video from the accident scene.  He complained about the level of extrinsic evidence on the video, including references to his criminal history.  The motion was addressed during the jury draw and the State indicated that it was not planning to use the body-cam video in its case-in-chief.  Defendant indicated that he might rely on portions of the video, and both he and the court acknowledged that this might open the door to the State's use of the video as well on rebuttal.  Defendant later sought to use portions of the body-cam video at trial, and the State stipulated to the authenticity of the video.  Defendant then relied on portions of the video during cross-examination.

During defendant's presentation of his case, the court asked defense counsel if defendant planned to testify.  Defense counsel questioned whether the State could introduce portions of the body-cam video should he testify.  The State responded that, if defendant testified, it would seek to admit portions of the body-cam video to show defendant's demeanor as well as a statement from his alleged passenger.  The portions of the video that referenced defendant's criminal history were not at issue and, as indicated below, reference to his parole status was muted.  Defendant questioned the relevance of the evidence and argued that its prejudicial effect outweighed its probative value.  He worried about his use of profanity on the video as well as his

physical condition. Defendant also argued that it would be unfair to allow the State to use this evidence when it had indicated pretrial that it did not intend to do so.

After reviewing the videos, the court determined that they would be admissible except for a spontaneous statement by defendant that he was on parole, which the court found unduly prejudicial. The balance of the video clips, the court explained, presented a real-time depiction of defendant at the accident scene, including his demeanor. The court found defendant's condition at the time of the accident highly relevant to the jury's inquiry and not unduly prejudicial. The court noted that the jurors had heard profanity before and they would be able to understand that this involved a serious accident.

Defendant then complained that the State initially had agreed not to use the video as substantive evidence in its case-in-chief. Defendant argued that using this evidence as impeachment evidence would be valuable to the State's case and that the jury would not be able to grasp the distinction. Defendant also maintained it would be unfair to admit the videos because he was disoriented from the accident at the time.

The court rejected these arguments. It referenced its review of the videos and found the videos relevant, probative, and not unduly prejudicial, given the presentation of evidence at trial. It explained that defendant's pretrial motion focused on excluding the references to his criminal history, which had been done. At that time, the State indicated that it would not use the body-cam footage and that was how the State proceeded. Defendant then decided to use the footage and the State agreed to stipulate to the authenticity of the body cam footage. Defendant relied on the videos during cross-examination. The court found it fair that the State be able to use the body-cam footage as well. It is apparent from the record that the court was considering the admission of this evidence for impeachment purposes and not otherwise.

Defendant chose not to testify. The jury found defendant guilty of grossly negligent operation with serious injury resulting and domestic assault and it acquitted him of the remaining crimes. Defendant filed a motion for a new trial, which was denied. This appeal followed.

On appeal, defendant challenges the court's ruling that certain video clips would be admissible if he were to testify. He cites State v. Brunelle, 148 Vt. 347 (1987), and argues that the State should not have been allowed to seek admission of this evidence because it indicated pretrial that the evidence was not relevant. Defendant maintains that, as in Brunelle, a decision on admissibility should have been made only if he testified in a way that was inconsistent with the videos and that the court's ruling chilled his right to testify in his own defense.

Defendant did not argue below that the court should refrain from ruling on the admissibility of this evidence until he testified, and we thus do not address this argument. See Vt. Built, Inc. v. Krolick, 2008 VT 131, ¶ 10, 185 Vt. 139 ("The preservation rule is satisfied when the trial court had a fair opportunity to consider, evaluate and rule upon the question raised on appeal." (quotation omitted)). He raised the issue of admissibility and the court responded to his query. In any event, defendant's reliance on Brunelle is misplaced. In that case, we considered the circumstances under which evidence that was suppressed based on a violation of a defendant's constitutional rights could be introduced at trial. After weighing various considerations, we concluded "that previously suppressed evidence is unavailable to the State for impeachment purposes except when it is clear that the defendant has testified during direct examination in a manner contradictory to the suppressed evidence." Brunelle, 148 Vt. at 353. The evidence at issue in the instant case was not illegally obtained nor was it suppressed, and Brunelle is not relevant here.

2

We reached the same conclusion in State v. Fortier, 149 Vt. 599, 601 (1988), where a defendant similarly cited Brunelle and argued that the exclusion of evidence on relevance grounds in the State's case-in-chief barred use of this evidence for impeachment purposes. We rejected this argument, distinguishing Brunelle because it involved the use of constitutionally tainted evidence. We explained that the evidence had been initially excluded on relevance grounds and circumstances had changed during trial to make it relevant for impeachment purposes. The same is true in the instant case. There was no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice